Citation Nr: 1221996 
Decision Date: 06/22/12 Archive Date: 07/02/12

DOCKET NO. 08-13 419 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Portland, Oregon


THE ISSUES

1. Entitlement to service connection for a skin condition, to include as due to an undiagnosed illness. 

2. Entitlement to service connection for a respiratory disability, to include as secondary to an undiagnosed illness. 


ATTORNEY FOR THE BOARD

E. D. Anderson, Counsel


INTRODUCTION

The Veteran served on active duty from January 1989 to January 1993, from June 2003 to November 2003, and from May 2009 to May 2010. He is a Persian Gulf Veteran. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a January 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Portland, Oregon.

In his April 2008 substantive appeal, the Veteran requested a hearing before a member of the Board; however, he failed to appear for his scheduled hearing or provide good cause for this failure.

In December 2010, the Board remanded this matter to the RO via the Appeals Management Center (AMC) in Washington, D.C. to afford the Veteran VA examinations of his claimed disabilities. The action specified in the December 2010 Remand completed, the matter has been properly returned to the Board for appellate consideration. See Stegall v. West, 11 Vet. App. 268 (1998).


FINDINGS OF FACT

1. The Veteran's skin disabilities did not have onset in service and were not caused or aggravated by his active military service.

2. The Veteran does not currently suffer from a diagnosed respiratory disability.


CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for a skin disability, to include as due to an undiagnosed illness, have not been met. 38 U.S.C.A. §§ 1110, 1131, 1137 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.303, 3.304, 3.317 (2011).

2. The criteria for entitlement to service connection for a respiratory disability, to include as due to an undiagnosed illness, have not been met. 38 U.S.C.A. §§ 1110, 1131, 1137 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.303, 3.304, 3.317 (2011).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has reviewed all of the evidence in the claims folder. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence of record. Indeed, the Federal Circuit has held that the Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Therefore, the Board will summarize the relevant evidence where appropriate, and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to these claims. 

The Board must note that in reviewing this case the Board has not only reviewed the Veteran's physical claims file, but the Veteran's file on the "Virtual VA" system to insure a total review of the evidence. 

Service Connection

Service connection may be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred or aggravated in active military service. 38 U.S.C.A. §§ 1110, 1131 (West 2002); 38 C.F.R. § 3.303(a) (2011). In general, service connection requires competent and credible evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the current disability. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2011). 

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third elements is through a demonstration of continuity of symptomatology. Barr v. Nicholson, 21 Vet. App. 303 (2007); see Savage v. Gober 10 Vet. App. 488, 495-97 (1997); see also Clyburn v. West, 12 Vet. App. 296, 302 (1999). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post- service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Savage, 10 Vet. App. at 495-96; see Hickson v. West, 12 Vet. App. 247, 253 (lay evidence of in-service incurrence is sufficient in some circumstances for purposes of establishing service connection); 38 C.F.R. § 3.303(b). "Symptoms, not treatment, are the essence of any evidence of continuity of symptomatology." Savage, 10 Vet. App. at 496 (citing Wilson v. Derwinski, 2 Vet. App. 16, 19 (1991)).

Congress has specifically limited entitlement to service-connection for disease or injury to cases where such have resulted in a disability. 38 U.S.C.A. § 1110. Thus, in the absence of proof of a present disability (and, if so, of a nexus between that disability and service), there can be no valid claim for service connection. Gilpin v. West, 155 F.3d 1353 (Fed. Cir. 1998); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

The United States Court of Appeals for Veterans Claims (Court) has consistently held that, under the law cited above, "[a] determination of service connection requires a finding of the existence of a current disability and a determination of a relationship between that disability and an injury or disease incurred in service." Watson v. Brown, 4 Vet. App. 309, 314 (1993). This principle has been repeatedly affirmed by the Federal Circuit, which has stated that "a veteran seeking disability benefits must establish . . . the existence of a disability [and] a connection between the veteran's service and the disability." Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000).

Compensation may be paid to a Persian Gulf veteran who exhibits objective indications of chronic disability due to undiagnosed illnesses or combination of undiagnosed illnesses that became manifest either during active duty in the Southwest Asia theater of operations during the Persian Gulf War or to a degree of 10 percent or more before December 31, 2011, following such service. 38 U.S.C.A. § 1117; 38 C.F.R. § 3.317. Service connection may be granted when the evidence establishes: (1) that he or she is a Persian Gulf veteran; (2) who exhibits objective indications of chronic disability resulting from an illness or combination of illnesses manifested by one or more signs or symptoms such as those listed in paragraph (b) of 38 C.F.R. § 3.317; (3) which became manifest either during active military, naval or air service in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent or more not later than December 31, 2011; and (4) that such symptomatology by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis.

A "qualifying chronic disability" for purposes of 38 U.S.C.A. § 1117 is a chronic disability resulting from (A) an undiagnosed illness, (B) a medically unexplained chronic multisymptom illness (such as chronic fatigue syndrome (CFS), fibromyalgia, or irritable bowel syndrome) that is defined by a cluster of signs or symptoms, or (C), any diagnosed illness that the Secretary determines in regulation prescribed under subsection (D) warrants a presumption of service connection. 38 U.S.C.A. § 1117(a)(2); 38 C.F.R. § 3.317(a)(2)(i)(B)(1).

Service connection may be granted for objective indications of a chronic disability resulting from an illness or combination of illnesses manifested by one or more signs or symptoms, to include, but not limited to, fatigue, signs or symptoms involving skin, headaches, muscle pain, joint pain, neurological signs or symptoms, neuropsychologic signs or symptoms, signs or symptoms involving the respiratory system (upper or lower), sleep disturbances, gastroesophageal signs or symptoms, cardiovascular signs or symptoms, abnormal weight loss, or menstrual disorders. 38 U.S.C.A. § 1117; 38 C.F.R. § 3.317. The undiagnosed illness must not be attributed to any known clinical diagnosis by history, physical examination, or laboratory tests. 38 C.F.R. § 3.317(a)(1)(i)).

A chronic disability for purposes of 38 U.S.C.A. § 1117 is one that has existed for 6 months or more, including disabilities that exhibit intermittent episodes of improvement and worsening over a 6-month period. 38 C.F.R. § 3.317(a)(3).

The Veteran is seeking entitlement to service connection for a skin condition and a respiratory disability.

Skin Condition

While there is no evidence of a chronic skin disability in the Veteran's service treatment records, post-service VA treatment records show treatment for psoriasis tinea cruris, and xerosis (a skin problem). 

At a VA examination in December 2010, the Veteran reported intermittent problems with tinea cruris, which he treats with over-the-counter topical medications as needed. He was unsure that he ever had psoriasis, just some dry areas on his arms. His primary complaint was dry, flaky skin and cracking on his fingertips and feet. 

On examination, there were no obvious psoriasoform lesions or dysplastic nevi. The examination was positive for multiple lentigines. There was minimal intertriginous, shiny bilateral inguinal erythema without desquamation. There was slight intertriginous fissuring, erythema, and desquamation between the toes, as well as diffuse cracking and desquamation on the fingers, toes, and soles. The Veteran's skin condition affected less than five percent of his exposed areas (head, face, neck, hands) and less than five percent of his total body area. The Veteran was diagnosed with asteatotic dermatitis (eczema cracquelatum) due to severe xerosis, mild tinea pedis, and mild tinea cruris. No current evidence of psoriasis was observed. The examiner concluded that "none of the above are specifically related to the Persian Gulf", providing highly probative medical evidence against this claim. 

In April 2012, the examiner reiterated her conclusion that the Veteran's skin conditions are less likely than not incurred in or caused by the Veteran's active military service. She noted that the Veteran was not treated for any skin problems in service and clarified that the Veteran's skin conditions were not due to an undiagnosed condition, but rather were several common, diagnosable conditions with known causes. She stated, "tinea cruris is the same as "jock itch", tinea pedis is the same as "athlete's foot", and xerosis is not really a disability, just relatively dry skin. No medical reason exists to link them with the Persian Gulf."

Based on all the above, the Board finds that entitlement to service connection for a skin disability is not warranted. There is no evidence that the Veteran's current skin conditions had onset in service and there is no evidence even suggesting that his conditions could be related to service. Further, an examiner has opined that the Veteran's skin disabilities are less likely than not related to his military service, to include as due to an undiagnosed Gulf War illness. She noted that the Veteran suffers from common, diagnosable skin conditions unrelated to his service in the Persian Gulf. There is no medical evidence to the contrary.

To the extent that the Veteran has suggested a relationship between any of his current skin disabilities and his active military service, he has not demonstrated that he has any knowledge or training in determining the etiology of such conditions. In other words, he is a layman, not a medical expert. The Board recognizes that there is no bright line rule that laypersons are not competent to offer etiology opinions. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (rejecting the view that competent medical evidence is necessarily required when the determinative issue is medical diagnosis or etiology). Evidence, however, must be competent evidence in order to be weighed by the Board. Whether a layperson is competent to provide an opinion as to the etiology of a condition depends on the facts of the particular case.

In Davidson, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) drew support from Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) for support for its holding. Id. In a footnote in Jandreau, the Federal Circuit addressed whether a layperson could provide evidence regarding a diagnosis of a condition and explained that "[s]ometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007).

Although the Veteran seeks to offer etiology opinions rather than provide diagnoses, the reasoning expressed in Jandreau is applicable. The Board finds that the question of whether the Veteran currently has xerosis, tinea pedis, or tinea curis due to his Persian Gulf service is too complex to be addressed by a layperson. This connection or etiology is not amenable to observation alone. Rather it is common knowledge that such relationships are the subject of extensive research by scientific and medical professionals. Hence, the Veteran's opinion of the etiology of his current disability is not competent evidence and is entitled to low probative weight.

Accordingly, based on all the above evidence, entitlement to service connection for a skin disability, to include as due to an undiagnosed illness, is denied. The evidence in this case is not so evenly balanced so as to allow application of the benefit-of- the-doubt rule. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102 (2011).

Respiratory Disability

The Veteran's service treatment records show treatment for multiple upper respiratory infections, as well as complaints of chronic sinus problems and possible allergies. At separation from service, the Veteran complained of chronic cough, chronic or frequent colds, and ear, nose, and throat problems. However, the Report of Medical Examination completed in November 1992 does not note any respiratory disability, providing evidence against this claim.

At a post-service Gulf War Registry examination in December 2004, the Veteran complained of shortness of breath, which the examiner attributed to anxiety. However, in March 2005, the Veteran sought treatment for chest tightness, shortness of breath, and wheezing. The Veteran was assessed with asthma and prescribed an inhaler and antibiotics for a possible upper respiratory infection. 

At an October 2008 VA examination, the Veteran denied chronic coughing, wheezing, or shortness of breath. However, he described having the sensation of constantly feeling like he needs to take deep breaths. He also reported that he wheezes at bedtime. He did not regularly use an inhaler, steroids, or oxygen. His lungs were clear to auscultation and pulmonary function tests were within normal limits, providing objective evidence against this claim. 

The examiner opined that the Veteran's diagnosis of asthma in March 2005 was likely due to an upper respiratory infection rather than chronic asthma, but stated that because a particular test called a provocholine challenge was not performed as she requested, she was unable to determine whether or not the Veteran has asthma without resorting to speculation. 

At a December 2010 VA examination, the Veteran reported exposure to environmental irritants such as smoke and fumes during his service in the Persian Gulf. He noticed an increased cough even after he returned home, and since then has developed dyspnea at rest and has noticed the sensation that he cannot get a complete breath while talking. He was not actually dyspneic on exertion, as he was able to exercise regularly without any difficulty. However, he did feel that he "wheezes" a little, which he described as feeling that he cannot get a full breath. 

Chest x-rays and pulmonary function tests were within normal limits, providing more objective evidence against this claim. The Veteran had slightly prolonged expiration. But the provocholine challenge was again not performed. The examiner stated that a diagnosis of asthma could not be confirmed by pulmonary function tests. However, she noted that "veterans with the same noxious pulmonary exposures (bioaerosols, particulate matter, fumes) often develop insidious onset of constrictive bronchiolitis, so it is as likely as not that his cough and dyspnea are due to his service activities."

The provocholine challenge was finally performed in April 2012 and was negative, providing more objective evidence against this claim. In an April 2012 VA examination report, the examiner noted that "no lung pathology or condition is diagnosed in this veteran on the basis of currently available test and physical exam results." 

She further explained:

No specific lung pathology is currently diagnosed. [The Veteran] was exposed to multiple respiratory irritants and toxicants in the Persian Gulf, including burn pits, oil fires, and chronic burning fumes. Subsequently, he was diagnosed with asthma (RAD) clinically. Subsequent [pulmonary function tests] and methacoline challenge did not confirm asthma. However, it has become evident that many veterans with the same exposures go on to develop the insidious onset of constrictive bronchiolitis, which is not demonstrable early on by any objective testing. Therefore, his dyspnea should be followed over time. 

Based on the above, the Board finds that entitlement to service connection for a respiratory disability cannot be granted at this time. While the Veteran has testified to symptoms such as dyspnea and has a history of in-service exposure to environmental irritants, he currently has no diagnosed respiratory disability and there is significant highly probative medical evidence against a finding that the Veteran has this disability at this time. Under 38 U.S.C.A. § 1131, a claimant must submit proof of a presently existing disability resulting from service in order to merit an award of compensation. See Gilpin v. West, 155 F.3d 1353 (Fed. Cir. 1998). 

The VA examiner has suggested that other veterans with similar exposure to the Veteran's have developed constrictive bronchiolitis, which is not demonstrable with early objective testing; however, there is no way to determine at this time whether or not the Veteran will develop constrictive bronchiolitis, or some other respiratory disability, in the future. The Board is unable to grant entitlement to service connection for a disability the Veteran might develop in the future. If, at a future date, the Veteran is actually diagnosed with a respiratory disability, his claim can be reconsidered. At this time, notwithstanding the Veteran's statements, the evidence, overall, is clearly against a finding that he has this disability, at this time, or at any time within the appeal period. The Veteran's statements are simply outweighed by the post-service medical evidence of record. 

For all the above reasons, entitlement to service connection for a respiratory disability must be denied. The evidence in this case is not so evenly balanced so as to allow application of the benefit-of- the-doubt rule. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102 (2011).

The Duty to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), the United States Department of Veterans Affairs (VA) has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2011). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159. This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

In Dingess v. Nicholson, 19 Vet. App. 473 (2006), the U.S. Court of Appeals for Veterans Claims (the Court) held that, upon receipt of an application for a service-connection claim, 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b) require VA to review the information and the evidence presented with the claim and to provide the claimant with notice of what information and evidence not previously provided, if any, will assist in substantiating, or is necessary to substantiate, each of the elements of the claim, including notice of what is required to establish service connection. The veteran must also be informed that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Here, no notice as to how VA assigns disability rating or effective dates was provided; however, as entitlement to service connection is being denied, no disability rating or effective date will be assigned with respect to these claimed conditions. 

The duty to notify was otherwise satisfied by a letter sent to the Veteran in August 2005. This letter informed the Veteran of what evidence was required to establish his claims and of VA and the Veteran's respective duties for obtaining evidence. 

VA also has a duty to assist the claimant in the development of the claim. This duty includes assisting the Veteran in the procurement of service medical records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). It appears that all evidence necessary for a fair adjudication of the claim is of record. 

The RO has obtained the Veteran's service treatment records, as well as VA treatment records. The Veteran was also afforded VA examinations in September 2004, December 2005, October 2008, December 2010, and April 2012. These examinations are adequate and probative for VA purposes because the examiners relied on sufficient facts and data, provided a rationale for the opinions rendered, and there is no reason to believe that the examiners did not reliably apply reliable scientific principles to the facts and data. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). 

Significantly, the appellant has not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. 

Based on the above, no further notice or assistance to the appellant is required to fulfill VA's duty to assist the appellant in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).


ORDER

Entitlement to service connection for a skin disability, to include as due to an undiagnosed illness, is denied.

Entitlement to service connection for a respiratory disability, to include as due to an undiagnosed illness, is denied.


____________________________________________
JOHN J. CROWLEY 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs